## IN THE
## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **David Robert Bentz (S-03210),** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 12 C 1753 |
| v. ) | |
| ) | Judge Sharon J. Coleman |
| ) | |
| **Lanel Palmer and Robert Zernicke,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Robert Bentz (hereinafter "Plaintiff" or "Bentz"), an Illinois prisoner currently confined at Menard Correctional Center, initiated this 42 U.S.C. § 1983 action concerning events that occurred at Stateville Correctional Center in 2010. Plaintiff contends that Stateville Officers Lanel Palmer and Robert Zernicke (hereinafter "Defendants," "Palmer," or "Zernicke") acted with deliberate indifference to: (1) Plaintiff's unsanitary cell conditions and (2) Plaintiff's safety. Defendants have filed a motion for summary judgment, in which they contend Plaintiff cannot establish deliberate indifference with either failing to protect Plaintiff from an attack or with the unsanitary conditions of Plaintiff's cell. Plaintiff has responded. For the reasons stated herein, Defendants' motion is granted.

## SUMMARY JUDGMENT STANDARD

**Fed. R. Civ. P. 56:**

This Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence of a genuine issue of material fact, this Court construes all facts in a light most favorable to the non-moving party

and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The party asserting that a fact is not genuinely disputed, "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A). If the moving party meets its burden of showing that no issue of material fact exists and that it is entitled to a judgment as a mater of law, the non-moving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Anderson*, 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000).

**N.D. Ill. Local Rule 56.1:**

When addressing a summary judgment motion, the Court derives the background facts from the parties' Local Rule 56.1 Statements, which assist the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000).

Because Plaintiff is proceeding *pro se*, Defendant served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by N.D. Ill. Local Rule 56.2. (R. 99.) The notice explains the consequences of failing to properly respond to a motion for summary judgment and to the factual statements in the movant's Local Rule 56.1 Statement. (*Id.*)

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). In turn, "[t]he opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (quoting N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the non-moving party to present a separate statement of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon to support the statement of additional facts. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir. 2008).

The purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (holding that statement of facts did not comply with Rule 56.1 'as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving

party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632; *see also Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505, 513 (7th Cir. 2013). In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012).

In the present case, Defendants filed a Rule 56.1 Statement with factual allegations supported by citations to the record. (R. 98, Defs. Statement of Material Facts ("SOF")); *see also* Local Rule 56.1(a). Plaintiff responded to some of Defendants' Local Rule 56.1 factual statements and asserted some of his own factual statements (*see* R. 105 at p.2); however, except for one response, he included no citations to the record. (*Id*. ¶ 2 (Plaintiff cited to the record only for the statement of fact that he is an inmate now incarcerated at Menard Correctional Center)). As to most of Defendants' factual statements, Plaintiff made only a general denial: "Plaintiff objects to all other undisputed material facts ... by Defendants." (*Id*. ¶ 7.) Such a general objection does not comply with Local Rule 56.1(b), and the only facts submitted in accordance with the Court's local rules are Defendants'. Accordingly, to the extent they are supported by the record, Defendants' Local Rule 56.1 factual statements are admitted. Although Plaintiff's responses do not cite the record and need not be considered, the Court notes that his responses essentially state the same facts presented by Defendants, and the parties do not appear to dispute the relevant facts of this case.

# FACTS

Plaintiff is currently confined at Menard Correctional Center. (R. 98, Defs. SOF ¶ 1.) On February 12, 2010, Plaintiff was confined at Stateville Correctional Center and was housed in cell F-312. (*Id.* at ¶ 5.) On that day, Plaintiff received a new cellmate, Cieuciera. (*Id.* at ¶ 6.) On March 5, 2010, Plaintiff gave a note to the on-duty lieutenant asking to be moved. (*Id.* ¶ 7.) The note allegedly said that Plaintiff faced health and sanitation risks by being celled with Cieciura and that Plaintiff feared a physical altercation may occur between them. (*Id.* at ¶ 8.) On March 7, 2010, Plaintiff submitted two additional request slips: one to a prison counselor and another to Officer Garcia (neither party is a defendant). (*Id.* at ¶ 9.) These two requests set forth a litany of reasons why Plaintiff wanted to be moved: (1) Cieciura spat everywhere in the cell; (2) Cieciura often masturbated in his bed; (3) he cleaned neither his clothes nor his bedding; (4) Cieciura's mattress smelled; and (5) Cieciura and Plaintiff did not get along. (*Id.* at ¶ 10.)

Plaintiff also told Officers Palmer and Zernicke about Cieciura's excessive spitting and masturbation, as well as other things, and explained that the two inmates did not get along, that they were at a point where they were "not compatible in any way, shape, or form," and that he was attempting "to avoid an incident." (*Id.* at ¶ 14, quoting Exh. A, Pl. Depo at 23.) The Defendants told Plaintiff that neither he nor Cieciura would be moved unless they fought. (R. 98, Defs. SOF ¶ 15); *see also* (R. 105, Pl's Resp. at p.2 ¶ 4.) (Plaintiff states he asked the Defendants to be moved in order to avoid a physical altercation, and that the Defendants told Plaintiff the only way he or Cieciura would be moved was if they fought).

On March 9, 2010, there was an altercation. (R. 98, Defs. SOF at ¶ 16.) According to Plaintiff, Cieciura attempted to strike Plaintiff with a cable cord. (*Id.* at ¶ 17.) Plaintiff caught the cord, took it

from Cieciura, and suffered no injuries. (*Id.* at ¶¶ 18-19.) Plaintiff admits that the incident "wasn't really ... a fight." (*Id.* at ¶ 20), quoting Exh. A, Pl. Depo at 21 ("It wasn't really even a fight. It was just him swinging a cable cord at me two or three times and me grabbing it from him and that was the end of it. Once I took the cable cord from him, it was over."). After the incident, Plaintiff was given a disciplinary ticket and subsequently was placed in segregation. (*Id.* at ¶ 21.)

## DISCUSSION

The parties agree that this case consists of two claims: (1) whether Defendants acted with deliberate indifference to Plaintiff's safety by encouraging a fight between Plaintiff and his cellmate Cieciura and (2) whether Defendants acted with deliberate indifference to adverse living conditions because they did nothing to address Cieciura's unsanitary habits. The summary judgment evidence reveals that Plaintiff can succeed on neither claim.

**Failure to Protect:**

Officers have a duty to protect inmates from violence at the hand of other inmates. Liability based upon a breach of such a duty, however, exists only if (1) the inmate faced a substantial risk of serious harm and (2) the officer deliberately disregarded that risk. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)); *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010). The first prong is an objective one, and the risk of harm must have been objectively serious. Generally, when the feared attack occurs, courts have held that "the objective prong is satisfied." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008); *Grieveson*, 538 F.3d at 775.

The second prong is subjective, such that the inmate must be able to prove that the officer both knew the inmate faced a "substantial risk of serious harm" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Grieveson*, 538 F.3d at 777, quoting *Farmer*, 511 U.S. at 847. The

Supreme Court has compared the deliberate indifference state of mind to criminal recklessness. *Farmer*, 511 U.S. at 837. This subjective standard "requires a showing of more than mere or gross negligence," and the state of mind of the officer must approach an intentional wrongdoing. *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012); *see also Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "It is not enough . . . that the guard *ought* to have recognized the risk. Instead, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004), citing *Farmer*, 511 U.S. at 837.

The Seventh Circuit has vividly likened an officer's failure to protect to knowledge of a deadly snake in the inmate's cell. *Dale v. Poston* 548 F.3d 563, 569 (7th Cir. 2008) ("if the prison officials know 'there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference'"), quoting *Billman v. Ind. Dep't of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995). However, an inmate's communication to officers that he "was being harassed by a garter snake," does not establish deliberate indifference. Such a threat is "[i]rritating, yes. Deadly, no." *Dale*, 548 F.3d at 569.

Continuing with the Seventh Circuit's analogy, the record before this Court clearly establishes that this case involves an annoying garter snake, not a cobra. Viewing the summary judgment in a light most favorable to Plaintiff, he was celled with a very unsanitary cellmate, he told Defendants about Cieciura's unsanitary habits, and he told them "that we don't get along, and we're just trying to avoid an incident, because we're both at that point, you know, where we don't get along and we're just not compatible in any way, shape, or form." (R. 98-1, Exh. A, Pl. Depo. at 23.) At the time Plaintiff spoke to Defendants, there had been no physical altercation between Cieciura and him, nor had there been any

threatened violence. Plaintiff cannot establish that the Defendants knew of but "fail[ed] to take reasonable measures to abate" a "substantial risk of serious harm." *Grieveson*, 538 F.3d at 777, quoting *Farmer*, 511 U.S. at 847.

As to the physical altercation that did occur, it cannot be characterized as a "substantial risk of serious harm." *Grieveson*, 538 F.3d at 777. As described by Plaintiff: "It wasn't really even a fight. It was just him swinging a cable cord at me two or three times and me grabbing it from him and that was the end of it. Once I took the cable cord from him, it was over." (R. 98, Exh. A, Pl. Depo at 21.)

Courts have routinely held that "not every push or shove by a prison guard violates a prisoner's constitutional rights." *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) ("a *de minimis* use of physical force" is insufficient to establish the constitutional violation of excessive force), citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012). Similarly, an ineffective swing from an inmate who had never threatened violence before – which is the incident upon which Plaintiff's failure-to-protect claim is based – does not support a constitutional claim. Again returning to the Seventh Circuit's analogy, now that the parties have conducted discovery and developed a record, it is clear that, with respect to this claim, Plaintiff at most can prove that he was almost bit by garter snake. Summary judgment is granted for this claim.

**Deliberate Indifference to Adverse Living Conditions:**

Pursuant to the Eighth Amendment, a prisoner's confinement must be at least "humane" with "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Sain v. Wood*, 512 F.3d 886, 893 -94 (7th Cir. 2008); *see also Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Prison conditions cannot involve "the wanton and unnecessary infliction of pain." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). To establish an Eighth Amendment violation,

an inmate must establish both: (1) that the conditions at issue were "sufficiently serious" such that they denied him of the "minimal civilized measure of life's necessities," and (2) that the officers acted with deliberate indifference to those conditions, i.e., that they actually knew of the conditions but refused to take reasonable steps to resolve them. *Townsend*, 522 F.3d at 773, quoting *Farmer v. Brennan*, 511 U.S. at 834.

With respect to first prong, "[p]rison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997), citing *Farmer*, 511 U.S. at 833-34; *see also Board v. Farnham*, 394 F.3d 469, 477 (7th Cir.2005) (the fact that incarceration interferes with a person's desire to live comfortably does not render confinement conditions unconstitutional). The deprivations must have been "extreme" to establish that a condition of confinement rose to the level of unconstitutional. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). To determine whether unsanitary conditions are objectively severe, courts consider both the nature of the conditions and their duration. *Dixon*, 114 F.3d at 643.

No definitive test distinguishes between conditions that are harsh, annoying, and uncomfortable from conditions that are inhumane and unconstitutional, but the following types of unsanitary conditions have been found to be inhumane: sleeping on a wet, moldy mattress for 59 days, *Townsend*s, 522 F.3d at 773-74; living 16 months in a cell infested with cockroaches that was sprayed only twice, *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996); living in "'filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, poor lighting, inadequate heating, unfit water to drink, dirty and unclean bedding, without toilet paper, rusted out toilets, broken windows, [and] ...

drinking water contain[ing] small black worms which would eventually turn into small black flies,'" *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

By contrast, summary judgments have been upheld in cases where a prisoner often saw roaches and was bitten twice, but conceded that an exterminator visited his cell every month and a half and would respond to his complaints. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008); and where a inmate was "extremely dirty" from living twenty-eight days in a "filthy," "roach infested" cell with little to no personal hygiene products but the inmate suffered no physical harm and the exposure to adverse conditions was temporary. *Harris v. Fleming*, 839 F.2d 1232, 1233–34 (7th Cir. 1988).

Plaintiff's exposure to the unsanitary conditions caused by his cellmate Ciuciera lasted for 25 days (February 12, to March 9, 2010). During that time, Cieciura spat everywhere, excessively masturbated into his sheets, and infrequently changed his bedding and clothes. Exposure to such adverse conditions, though clearly annoying and uncomfortable, cannot establish an unconstitutionally unsanitary condition. Although this Court has been unable to find a case where the unsanitary cell conditions were from the unclean and disgusting habits of a cellmate, courts have found no constitutional violations with an inability to shower or change sheets for extended periods of time. *Coughlin v. Sheahan*, No. 94 C 2863, 1995 WL 12255, *2-3 (N.D. Ill. Jan. 12, 1995) (Conlon, J.) (providing only one change of clothing in three-month period did not rise to level of a constitutional violation); *Chavis v. Fairman*, No. 92 C 7490, 1994 WL 55719, *5 (N.D. Ill. Feb. 22, 1994) (Aspen, J.) (providing inmate with a change of clothing once every three weeks did not violate the Constitution); *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988) (no constitutional violation when a prisoner could shower only once a week).

The 25-day cell conditions Plaintiff describes, though unfortunate and undesirable, do not rise to the level of unconstitutional. Summary judgment is thus warranted for this claim.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment [96] is granted. All other pending motions are denied. Plaintiff shall take nothing from this case. This case is closed. If Plaintiff wants to appeal this decision, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). If he seeks to proceed *in forma pauperis* ("IFP") on appeal, he must submit another IFP application and set forth the issues he intends to present on appeal. Fed. R. App. P. 24(a)(1)(C). If Plaintiff appeals, he will be liable for the $505 appellate filing fee irrespective of the appeal's outcome, *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998), and if the appeal is found to be non-meritorious, its dismissal may count as one his three allotted dismissal under 28 U.S.C. § 1915(g) (a prisoner with three or more federal cases or appeals dismissed as frivolous, malicious, or for failure to state a claim may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury).

ENTER: _____
**SHARON J. COLEMAN**
**United States District Judge**

**DATE:** March 5, 2015